# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND, SOUTHERN DIVISION

**ELLEN RYAN**, on behalf of herself  
and all others similarly situated,      *

    Plaintiff,      *

v.      *    Civil Action No.: _____

**CAPITAL ASSET MANAGEMENT**      *  
**GROUP, INC.**      *

    Defendant.      *

     *   *   *   *   *   *   *   *   *   *   *

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Capital Asset Management Group, Inc. ("CAMG" or "Defendant"), by and through undersigned counsel, respectfully files this Notice of Removal pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, to remove to the U.S. District Court for the District of Maryland an action initiated against CAMG in the Circuit Court of Maryland for Montgomery County, Case No. C-15-CV-25-000986. As grounds for removal, CAMG states as follows:

### I. BACKGROUND

1. On March 3, 2025, Plaintiff Ellen Ryan ("Plaintiff") commenced a civil action against Defendant in the Circuit Court of Maryland for Montgomery County, Case No. C-15-CV-25-000986 ("State Court Action").[1] Plaintiff filed the Complaint as a putative class action.

---

[1] In accordance with 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings and orders received by counsel for the Defendant in the State Court Action are being filed as attachments to this Notice of Removal and are incorporated herein by reference.

2. Plaintiff alleges that "an unauthorized actor accessed [CAMG's] employee email network between January 19, 2024, and February 9, 2024" (the "Data Incident"). (Compl. ¶ 30.) She contends that, "[a]s a result of the [Data Incident], [personal information] (including her name and social security number) of Ms. Ryan was accessed and disclosed in an unauthorized manner." (*Id.* ¶ 29.) Plaintiff alleges that she and class members sustained injuries, including:

- Theft of their Personal Information;

- Publication of their Personal Information on the Dark Web;

- Damages to and diminution in value of their Personal Information;

- Loss of the opportunity to control how their Personal Information is used;

- Time spent on efforts to research how to prevent, detect, contest, and recover from misuse of Personal Information;

- Emotional distress from the unauthorized disclosure of information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff; and

- Continued risk of exposure to hackers and thieves of their information, which remains in Defendant's possession and is subject to further breaches so long as CAMG fails to undertake appropriate and adequate measure to protect Class members' data.

(*Id.* ¶ 64.)

3. Based on these allegations, Plaintiff asserts three causes of action against CAMG: (1) negligence; (2) violation of Maryland's Personal Information Privacy Act ("PIPA"), and (3) violation of Maryland's Consumer Protection Act ("CPA").

4. Plaintiff purports to bring these three causes of action on behalf of herself and a class defined as "All persons whose Personal Information was maintained by [CAMG] and accessed or acquired during the Data [Incident] of their network that occurred in January and February 2024." (*Id.* ¶ 70.)

## II.     REMOVAL IS TIMELY

5. Plaintiff filed this lawsuit on March 3, 2025, and served CAMG with a copy of the Summons and Complaint on March 17, 2025. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of documents received in the State Court Action by CAMG are attached hereto as exhibits. Specifically, attached to this Notice of Removal are true and correct copies of (1) the operative Complaint (**Exhibit A**); (2) true and correct copies of documents received in the State Court Action by CAMG (**Exhibit B**); and (3) the federal civil cover sheet (**Exhibit C**).

6. No other pleadings or substantive filings (*i.e.*, answers, state court orders terminating or dismissing parties, responses, etc.) have been filed in the State Court Action.

7. This removal is timely because CAMG filed this removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when the defendant is served).

## III.    THIS COUT HAS ORIGINAL JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

8. This Court has original jurisdiction over this action under 28 U.S.C. § 1332. This Court is in the judicial district and division embracing the place where the State Court Action was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

9.      Removal is proper under the Class Action Fairness Act of 2005 ("CAFA") (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is a citizen of a different state than the state of citizenship of the defendant. *See* 28 U.S.C. § 1332(d).

10.     As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), CAMG may remove the State Court Action to federal court under CAFA because this case is: (i) pled as a putative class action, (ii) with over 100 proposed putative class members, (iii) that involves a minimal diversity of citizenship among the parties, and (iv) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d).

**A. The Complaint is pled as a putative class action.**

11.     CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

12.     Plaintiff seeks class certification under Maryland Rule of Civil Procedure 2-231 (Compl. ¶¶ 69-87.) The Maryland Court of Appeals has recognized that Fed. R. Civ. P. 23 is "the federal counterpart to Rule 2-231." *Smith v. Westminster Mgmt.*, 290 A.3d 1161, 1204 n. 59 (Md. App. 2023). Thus, the CAFA requirement that the Complaint is pled as a class action is satisfied. *See* 28 U.S.C. § 1332(d)(1)(B).

**B. Plaintiff alleges a putative class with over 100 proposed members.**

13. Plaintiff seeks to represent the following nationwide class of persons: "All persons whose Personal Information was maintained by [CAMG] and accessed or acquired during the Data [Incident] of their network that occurred in January and February 2024." (Compl. ¶ 70.)

14. Plaintiff alleges that "the Class Members are so numerous that the joinder of all members is impracticable. Upon information and belief, there are over one thousand . . . individuals whose Personal Information may have been improperly accessed in the Data Breach." (Compl. ¶ 73.)

15. CAMG has sent notification to approximately 1,645 individuals residing in the United States, notifying them that they were potentially affected by the Data Incident.

16. Accordingly, the number of putative class members exceeds the statutorily required minimum of 100 individuals.

**C. Minimal diversity of citizenship exists.**

17. Under CAFA, federal courts may exercise jurisdiction over a class action if any class member is a citizen of a different state from any defendant. 28 U.S.C. § 1332(d)(2)(A).

18. <u>Defendant's Citizenship</u>. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *See also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (concluding that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," or where it has its "nerve center"). "[I]n practice it should normally be the place where the corporation maintains its headquarters[.]" *Id.* at 93.

19. As alleged in the Complaint, CAMG's principal place of business is in Washington, D.C. (Compl. ¶ 8.) CAMG is also incorporated in Washington, D.C. Thus, CAMG is a citizen of Washington, D.C.

20. <u>Plaintiff's Citizenship</u>. For purposes of determining a party's citizenship, a natural person is deemed a citizen of the State in which he or she is domiciled. *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 663 (4th Cir. 1998). "Although there is no statutory definition of an individual's state of citizenship, courts have held that it is the state of the individual's domicile, *i.e.*, the state [she] considers [her] permanent home." *Dyer v. Robinson*, 853 F. Supp. 169, 172 (D. Md. 1994) (citing *Gilbert v. David*, 235 U.S. 561, 569 (1914)). Domicile requires physical presence, coupled with an intent to make the State a home. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989); *Jahed v. Acri*, 468 F.3d 230, 236 (4th Cir.2006). Here, Plaintiff alleges that she is "a resident of Montgomery County, Maryland." (Compl. ¶ 6.)

21. <u>The Putative Class's Citizenship.</u> Plaintiff seeks to represent the following nationwide class of persons: "All persons whose Personal Information was maintained by [CAMG] and accessed or acquired during the Data [Incident] of their network that occurred in January and February 2024." (*Id.* ¶ 70.)

22. CAMG has sent notifications of the Data Incident to people with addresses in approximately 38 states, the District of Columbia, and internationally.

23. Because CAMG and Plaintiff are citizens of different states, CAFA's minimal diversity requirement is met in this case. *See* 28 U.S.C. § 1332(d)(2)(A).

**D. The amount in controversy exceeds the CAFA threshold.[2]**

24. The final requirement for CAFA jurisdiction—that the amount in controversy exceeds $5 million—is also met in this case. *See* 28 U.S.C. § 1332(d)(2).

25. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) *quoting* S. REP. NO. 109-14, at 43 (2005). "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 574 U.S. 81 at 89; *see also* 28 U.S.C. § 1446(c)(2)(B).

26. Courts may consider the combined total amount of alleged actual damages and punitive damages in determining the amount in controversy. *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."). "Where Maryland law permits recovery of attorneys' fees, potential attorneys' fees should be considered in determining whether the amount in controversy in a diversity action exceeds the jurisdictional threshold." *Francis v. Allstate Ins. Co.*, 869 F. Supp. 2d 663, 669 (D. Md. 2012) (cleaned up). Finally, "requests for injunctive relief must be valued in determining whether the plaintiff has alleged a sufficient amount in controversy." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010).

---

[2] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to damages in any amount. Defendant denies liability, denies Plaintiff is entitled to recover any amount, and denies that a class can be properly certified in this matter.

27.     Plaintiff requests the following relief, which, when aggregated across the putative class exceeds 1,645 individuals under Plaintiff's class definition, places more than $5 million in controversy, exclusive of interests and costs: (1) "equitable relief enjoining Defendant from engaging in the wrongful conduct described above"; (2) "compensatory damages"; (3) "reasonable attorney's fees and costs"; and (4) "such other and further relief as the Court deems just and proper." (Compl., Prayer for Relief.)

28.     Based on Plaintiff's allegations related to damages and the size of the putative class, these alleged damages easily surpass the $5 million jurisdictional threshold.

29.     For example, just the "credit monitoring and identity theft protection services" requested by Plaintiff in her Complaint, which she anticipates incurring costs for "once the temporary services being offered by Defendant expire" (*see* Compl., ¶ 64), would cost many millions of dollars and easily satisfies the jurisdictional threshold. The three identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $9.95 to $24.99.[3]  The cost of providing 10 years of credit-monitoring services at $24.99 per month for 1,645 individuals is approximately $5 million.

30.     Plaintiff and the putative class also seek to recover the "time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the [Data Incident]." (*Id.* ¶ 64.) These nebulous concepts are unquantified in the Complaint but would further add to the damages in excess of CAFA's jurisdictional threshold.

---

[3] Equifax, available at https://www.equifax.com/, last visited on Mar. 17, 2025; LifeLock by Norton, available at https://lifelock.norton.com/, last visited on Mar. 17, 2025; and Experian, available at https://www.experian.com/protection/identity-theft-and-credit-protection/, last visited on Mar. 17, 2025.

31. Further, Plaintiff claims that she and the putative class suffered "damages to and diminution in the value of their Personal Information" and the "loss of opportunity to control how their Personal Information is used." (*Id.*) These nebulous concepts are unquantified in the Complaint but would further add to the damages in excess of CAFA's jurisdictional threshold.

32. Additionally, Plaintiff contends that she and the putative class have already incurred costs to "enroll[] in credit monitoring and identity theft protection services." (*Id.*) These nebulous concepts are unquantified in the Complaint, but would further add to the damages in excess of CAFA's jurisdictional threshold. For example, if reimbursement for any past credit monitoring expenses were quantified in amounts similar to the Experian product described above, this would double the amount in controversy.

33. Plaintiff also seeks to recover her attorneys' fees, which are included to determine the amount in controversy under CAFA. *Francis*, 869 F. Supp. 2d at 669. Here, attorneys' fees are recoverable pursuant to the CPA. *See* Md. Code Ann., Com. Law § 13-408. And Plaintiff has requested fees in her Complaint. (Compl., Prayer for Relief.) When evaluating attorneys' fees for amount-in-controversy purposes, 33% can provide a guidepost of potential recoverable fees. *See Ciarciello v. Bioventus Inc.*, No. 1:23-CV-32, 2024 WL 5155539, *12 (M.D.N.C. Dec. 18, 2024) ("Finally, the requested award of 33% of the settlement fund is reasonable and customary when compared to attorneys' fees awards in similar cases. Courts in the Fourth Circuit have found awards of approximately one-third of the class fund to be reasonable") (collecting cases). Together with credit monitoring damages, CAFA's jurisdictional threshold is more than satisfied.

34. Accordingly, the CAFA amount-in-controversy threshold is satisfied before ever taking into account other forms of compensatory damages, punitive damages, or injunctive or declaratory relief, which would add even more to the total amount in controversy.

35. Based on Plaintiff's allegations, requested relief, and matters alleged by CAMG, Plaintiff's proposed class claims place in controversy an amount exceeding CAFA's $5,000,000 jurisdictional threshold. Because there are more than 100 putative class members, minimal diversity, and an amount in controversy exceeding $5,000,000, exclusive of interests and costs, CAMG has properly removed this action from the Circuit Court of Maryland for Montgomery County to the U.S. District Court for the District of Maryland, pursuant to 28 U.S.C. § 1453.

### IV.   RESERVATION OF RIGHTS AND DENIAL OF LIABILITY

36. Nothing in this Notice is intended or should be construed as an express or implied admission by Defendant of any fact alleged by Plaintiff, of the validity or merit of any of Plaintiff's claims and allegations, or as a limitation of any of Defendant's rights, claims, remedies, and defenses in connection with this action.

### V. CONCLUSION

37. Defendant removes the State Court Action to the U.S. District Court for the District of Maryland based on original jurisdiction under 28 U.S.C. § 1332(d).

38. Promptly after filing this Notice of Removal, Defendant will file a copy of it with the clerk of the state court in which this action is pending and will give written notice to counsel for Plaintiff, as required by 28 U.S.C. § 1446(d).

39. This Notice of Removal is submitted without waiver of any procedural or substantive defense that may be available to Defendant and without admitting any of the allegations contained within the Complaint.

                Respectfully submitted,

                **BAKER & HOSTETLER LLP**

                <u>*/s/ Elizabeth A. Scully*</u>
                Elizabeth A. Scully
                1050 Connecticut Avenue, NW
                Washington, D.C. 20036
                Telephone: (202) 861-1500
                Email: escully@bakerlaw.com

                *Attorneys for Defendant Capital Asset Management Group, Inc.*

4939-1573-0486.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of April 2025, a copy of the foregoing Notice of Removal to Federal Court and Exhibits thereto, was filed and served through ECF and email upon:

Arnold J. Abraham
The CyberLaw Group
220 N. Liberty Street
Baltimore, Maryland 21201
Phone: 443-906-3495
abraham@thecyberlawteam.com

Eric Menhart
Lexero LLC
80 M St SE Suite 100
Washington, D.C. 20003
Phone: 855-4-LEXERO (855-453-9376)
Eric.Menhart@lexero.com

*Attorneys for Plaintiff Ellen Ryan*

>                                 */s/ Elizabeth A. Scully*
>                                 Elizabeth A. Scully

4939-1573-0486.1