# Exhibit A

**IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND**

| | |
|---|---|
| ELLEN RYAN, an individual, <br> *on behalf of herself all others similarly situated,* <br><br> **c/o** Arnold Abraham, Esq. <br> The CyberLaw Group <br> 220 N. Liberty Street <br> Baltimore MD 21201 <br><br>         Plaintiff, <br> v. <br><br> **CAPITAL ASSET MANAGEMENT** <br>      **GROUP, INC.** <br>      1000 Potomac Street NW <br>      Washington, DC 20007 <br><br>         Defendant. | Case No.: <br><br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Ellen Ryan, an individual ("Ms. Ryan" or "Named Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, sues Defendant, Capital Asset Management Group, Inc. ("CAMG"), and states as follows:

1. This class action seeks monetary and injunctive relief to redress injuries resulting from Defendant's negligence and wrongful acts related to a computer data breach that exposed the personal data of individuals who were clients of CAMG.

2. This Court has subject matter jurisdiction over this action under the Class Action as the amount in controversy exceeds $25,000, exclusive of interest and costs, and the relief sought includes equitable, declaratory, and injunctive relief for which the Circuit Court has exclusive jurisdiction.

3. The overall amount in controversy in this case, including projected damages for the entire

1

prospective class, is below $5,000,000.00 and therefore this action is not subject to the Class Action Fairness Act.

4.      This Court has personal jurisdiction over the present matter because Defendant contracted to provide services in Maryland, or regularly conducts business in Maryland.

5.      Maryland is also where a substantial portion of the events or omissions giving rise to this claim occurred and a substantial portion of the property that is the subject of this action is situated.

6.      At all times material hereto, Ms. Ryan was sui juris and a resident of Montgomery County, Maryland.

7.      Capital Asset Management Group, Inc. ("CAMG") is a privately owned and independent financial service provider.

8.      CAMG's headquarters is in Washington, D.C.  and it has locations in Millville, DE; Newport News, VA; and Easton, MD.

9.      CAMG is a company doing business in Montgomery County, Maryland.

10.     CAMG has been operating over 40 years and reports that its areas of expertise include financial planning, retirement planning, investment management, risk management and insurance services, estate and legacy planning, long term care planning, comprehensive tax analysis and preparation, and more.

11.     CAMG claims to serve individuals of all incomes, ages and financial objectives, including young professionals, established professionals and those who are financially independent.

12.     CAMG has claimed "We are not status quo financial advisors."

13.     CAMG serves as fiduciary advisors for their clients.

14.     The President and Chief Executive Officer of CAMG, is John Girouard.

15.     Mr. Girouard holds the highest certifications in the field of financial advice, including. CFP®, ChFC®, CLU®, and CFS®.

16.     Mr. Girouard has published scores of articles and numerous books on issues of concern to investors and financial professionals.

17.     Certified Financial Planner (CFP®) are required to maintain confidentiality and privacy of its current and former clients according to the CFP Board's Code of Ethics and Standards of Conduct   See https://www.cfp.net/ethics/code-of-ethics-and-standards-of-conduct (last accessed February 23, 2025)

18.     The CFP Code of Ethics requires CFPs to take reasonable steps to protect the security of non-public personal information about any client, including the security of information stored physically or electronically, from unauthorized access that could result in harm or inconvenience to the client.

19.     According to the Securities Industry and Financial Markets Association (SIFMA), Cybersecurity must be a top priority in the financial industry to ensure the security of customer assets and information and the efficient, reliable execution of transactions within markets. https://www.sifma.org/explore-issues/cybersecurity/

20.     According to SIFMA, the financial services sector must be committed to furthering the development of industry-wide cybersecurity initiatives that protect our clients and critical business infrastructure, improve data sharing between public and private entities and safeguard customer information. https://www.sifma.org/resources/cybersecurity-resources/

3

21.     SIFMA provides resources to help financial services firms to address critical cyber threats and improve the industry's overall cybersecurity. https://www.sifma.org/resources/general/small-firms-cybersecurity-guidance-how-small-firms-can-better-protect-their-business/

22.     On information and belief, CAMG did not place sufficient priority on cyber security or maintaining privacy of their client's Personal Information – as evidenced by a lack of any mention of these issues on their public website that contains dozens of pages of detailed information about the company and its services.  See https://capitalamg.com/ (last accessed February 23, 2025.)

23.     "Personal information" ("PI") is defined under Maryland's Personal Information Privacy Act §14–3501 (e) (1).

24.     Ms. Ryan was a client of CAMG and entrusted her PI and financial records to them.

25.     Ms. Ryan ceased to be an active client of CAMG in 1996.

26.     Ms. Ryan has had no contact with CAMG for almost three decades.

27.     At all times material hereto, Ms. Ryans' PI was stored on CAMG's computer network and related cloud based network.

28.     In January 2024, Defendant suffered from a breach in their computer network security that had affected the privacy and PI of Ms. Ryan and numerous other clients.

29.     As a result of the breach, PI (including her name and social security number) of Ms. Ryan was accessed and disclosed in an unauthorized manner.

30.     According to CAMG, an unauthorized actor accessed their employee email network between January 19, 2024, and February 9, 2024.

31.     According to CAMG, the breach consisted of an "external system breach (hacking)."

32.     CAMG did not reveal how many times the unauthorized actor gained access to CAMG's data during this period of over 20 days.

33.     CAMG did not reveal what actions were taken by the unauthorized actor during the time they had access to CAMG's employee email network.

34.     According to CAMG, the breach enabled unauthorized access to PI, including social security numbers, of numerous persons.

35.     According to CAMG, they first became aware of a breach in their network security on July 16, 2024.

36.     CAMG did not reveal why it took them more than six months to discover the failure of their computer network security that resulted in a breach.

37.     According to CAMG, they first determined the identity of specific people whose PI had been compromised on July 16, 2024.

38.     According to CAMG, they provided notification to those affected on October 23, 2024.

39.     CAMG did not provide notifications of the incident until more than 90 days after the breach was allegedly discovered and almost a full year since the breach occurred.

40.     CAMG provided no explanation as to the delay in notification to those affected.

41.     CAMG's breach notification mailed to those impacted stated they investigated an incident involving unauthorized access to their employee email network, but they did not state the time period during which this incident occurred nor when it was first discovered by CAMG.

42.     CAMG's breach notification mailed to those impacted provided no information as to who was suspected to be the source of the breach or what specific failure there was in their security architecture, network, policy, or procedures.

43.     CAMG's breach notification mailed to those impacted provided no details as to what measures were taken to secure their network.

44.     CAMG's breach notification mailed to those impacted provided no details as to the breach investigation, such as the scope of effort and whether outside cyber security experts were retained.

45.     CAMG's breach notification mailed to those impacted provided no details as to the additional security measures and training they have undertaken to prevent future such incidents.

46.     On information and belief, the integrity of the CAMG's entire computer network was compromised based on this breach incident.

47.     On information and belief, the confidentiality of all information on CAMG's computer network was compromised based on this breach incident.

48.     On information and belief, ALL of CAMG's current and former clients had their PI and financial records exposed as a result of this breach.

49.     Plaintiff Ryan, despite having not been a client of CAMG for many years, was nonetheless victimized because CAMG did not regularly purge or securely archive data of its customers, including PI of Plaintiff Ryan.

50.     On information and belief, data resident on CAMG's network, including PI of current and former clients, was copied, downloaded and exfiltrated by criminal actors during the time they had unauthorized access.

6

51.    On information and belief, the compromised PI of current and former clients remains in the hands of criminal actors that breached CAMG's network.

52.    According to CAMG, the information accessed without authorization included the name, address, Social Security number, financial account information, date of birth, and email address of its clients.

53.    The information listed in the above paragraph fits in the category of financial information and Personal Information ("PI").

54.    Breaches of PI are subject to the provisions of the Maryland Personal Information Privacy Act ("MD PIPA").

55.    CAMG did not comply with breach notification requirements of MD PIPA.

56.    On information and belief, CAMG has been well aware of the risk posed to financial records such as what was exposed in this case.

57.    In the alternative, CAMG should reasonably have been well aware of the risk of cyber security breach such as what took place in this case.

58.    On information and belief, CAMG had access to numerous resources to provide awareness of the cyber threats to their network and to prepare defenses against such attacks.

59.    For example, SIFMA provides resources to help financial services firms to address critical cyber threats and improve the industry's overall cybersecurity.  See https://www.sifma.org/resources/general/small-firms-cybersecurity-guidance-how-small-firms-can-better-protect-their-business/  and  https://www.sifma.org/resources/cybersecurity-resources/

60.    The FS-ISAC also provides resources to help companies such as CAMG ensure adequate cybersecurity.  See  https://www.fsisac.com/about-us

61.     On information and belief, CAMG failed to leverage countless resources available through organizations such as SIFMA and FS-ISAC, or other sources, to improve its cybersecurity posture.

62.     On information and belief, despite its understanding of the need for cybersecurity, CAMG had no effective means to prevent, detect, stop, or mitigate breaches of its computer systems.

63.     On information and belief, CAMG failed to adequately train its employees on cybersecurity and failed to maintain reasonable computer security safeguards and protocols to protect PI in its possession.

64.     As a direct and proximate result of Defendant 's negligence, Plaintiff and Class members have sustained and will continue to sustain economic loss and other harms. They have experienced and/or face an increased risk of experiencing the following forms of injuries:

    a.  Direct and indirect negative impacts on health and welfare, leading to permanent and irreversible consequences in their personal and professional lives:

        i.   theft of their Personal Information;

        ii.  publication of their Personal Information to the Dark Web;

        iii. damages to and diminution in value of their Personal Information;
        iv.  loss of the opportunity to control how their Personal Information is used;

        v.   time spent on efforts to research how to prevent, detect, contest, and recover from misuse of Personal Information;

        vi.  Emotional distress from the unauthorized disclosure of information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff.

vii.   Continued risk of exposure to hackers and thieves of their information, which remains in Defendant's possession and is subject to further breaches so long as CAMG fails to undertake appropriate and adequate measures to protect Class members' data.

b.   Costs associated and time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the breach, including:

i.   money and time expended to prevent, detect, contest, and repair identity theft, fraud, and other unauthorized uses of Personal Information, including by identifying, disputing, and seeking reimbursement for fraudulent activity and canceling compromised financial accounts and associated payment cards; imposing withdrawal and purchase limits on compromised accounts and other accounts subject to potential compromise; enrolling in credit monitoring and identity theft protection services;

ii.   money and time lost as a result of fraudulent access to and use of their financial accounts, and fraudulent charges, loss of use of and access to their financial accounts and/or credit, including loss of use and access to their financial account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit;

iii.   money and time expended to periodically order credit reports and place temporary freezes on credit, and to

iv.   money and time expended to avail themselves of assets and/or credit frozen

or flagged due to misuse;

    v.   impairment of their credit scores, ability to borrow, and/or ability to obtain credit;

   vi.   anticipated future costs from the purchase of credit monitoring and identity theft protection services once the temporary services being offered by Defendant expire;

   c.   Costs associated with additional computer security needed due to increased personal vulnerability to cyber threats, including the enhanced risk of potential phishing attacks specifically crafted based on the extensive Personal Information revealed, such as increased costs for anti-malware software and network security software and monitoring services on all of Plaintiff's electronic devices, as well as increased time and effort to monitor for potential intrusions and respond to cyber security incidents on their personal devices and networks.

65.    Plaintiff was/will be required to spend a substantial amount of time responding to and rectifying the losses incurred.

66.    Plaintiff alleges that any and all time spent responding to and rectifying the breaches and losses described herein is properly valued at a fair hourly rate, multiplied by the time expended.

67.    The full impact of the violation of privacy through this breach can only be measured over the course of the lifetime of those affected.

68.    As a direct and proximate result of the unauthorized access and disclosure of her private information, Plaintiff became severely stressed and suffered anxiety, including physical manifestations.

<u>CLASS ALLEGATIONS</u>

**A.** STATEMENT OF MAINTAINABLE CLASS CLAIMS

69.    Pursuant to Md. Rule 2-231, Plaintiff brings this class action on behalf of herself and on behalf of all others similarly situated pursuant to Md. Rule 2-231(b)(2) and (3).

**B.** DEFINITION OF CLASS

70.    The "Class" that Plaintiff seeks to represent is defined as follows:  All persons whose Personal Information was maintained by CAMG and accessed or acquired during the Data Breach of their network that occurred in January and February 2024.

71.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parent entities, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

72.    Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

**C.** ALLEGATIONS OF NUMEROSITY

73.    Pursuant to Md. Rule 2-231(a)(1), the Class Members are so numerous that the joinder of all members is impracticable. Upon information and belief, there are over one thousand of individuals whose Personal Information may have been improperly accessed in the Data Breach, and the Class is readily identifiable within Defendant's records.

11

**D.** IDENTIFICATION OF COMMON QUESTIONS OF LAW OR FACT

74.     Pursuant to Md. Rule 2-231(a)(2), the questions of law and fact common to the

Class exist and predominate over any questions affecting only individual Class Members. These

include:

a.  Whether and to what extent Defendant had a duty to protect the Private
    Information of Plaintiff and Class Members;

b.  Whether Defendant had a duty not to disclose the Personal Information of
    Plaintiff and Class Members to unauthorized third parties;

c.  Whether Defendant had duties not to use the Personal Information of
    Plaintiff and Class Members for non-business purposes;

d.  Whether Defendant failed to adequately safeguard the Personal Information
    of Plaintiff and Class Members;

e.  Whether and when Defendant actually learned of the Data Breach;

f.  Whether Defendant adequately, promptly, and accurately informed Plaintiff
    and Class Members that their PI had been compromised;

g.  Whether Defendant violated the law by failing to promptly notify Plaintiff
    and Class Members that their PI had been compromised;

h.  Whether Defendant failed to implement and maintain reasonable security
    procedures and practices appropriate to the nature and scope of the
    information compromised in the Data Breach;

i.  Whether Defendant adequately addressed and fixed the vulnerabilities
    which permitted the Data Breach to occur;

j.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by
    failing to safeguard the Personal Information of Plaintiff and Class
    Members;

k.  Whether Plaintiff and Class Members are entitled to actual, consequential,
    and/or nominal damages as a result of Defendant' wrongful conduct;

l.  Whether Plaintiff and Class Members are entitled to restitution as a result
    of Defendant' wrongful conduct; and

m.  Whether Plaintiff and Class Members are entitled to injunctive relief to
    redress the imminent and currently ongoing harm faced as a result of the
    Data Breach.

**E.** ALLEGATIONS OF TYPICALITY

75.     Pursuant to Md. Rule 2-231(a)(3), Plaintiff's claims are typical of those of other Class Members because all had their Personal Information compromised as a result of the Data Breach due to Defendant's misfeasance.

**F.** ADEQUACY OF REPRESENTATION

76.     Pursuant to Md. Rule 2-231(a)(4), Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights Plaintiff has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action litigation.

77.     Moreover, Plaintiff has retained undersigned counsel, Arnold Abraham, with extensive cyber-security expertise, including as a senior executive at the Department of Homeland Security and Department of Defense, U.S. Cyber Command.[1]

78.     The plaintiff has also retained undersigned counsel, Eric Menhart, that has litigated complex technology cases for nearly twenty years. Among other things, Menhart has been quoted or featured in numerous media outlets, including the Baltimore Sun, Washington Post, CNN and Fox News on IT and IP legal issues. Menhart has also successfully litigated statutes such as the Stored Communications Act, Computer Fraud and Abuse Act in federal trial and appellate courts.

**G.** PREDOMINANCE

79.     Pursuant to Md. Rule 2-231(b)(2), Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that the Plaintiff's and Class Members' data was

---

[1] *See https://www.thecyberlawteam.com/about.*

13

maintained and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy. Defendant's policies challenged herein apply to and affect Class

80.    Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

**H.** SUPERIORITY

81.    Pursuant to Md. Rule 2-231 (b)(3), Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

82.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the

costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

83.     The litigation of the claims brought herein is manageable. Defendant's uniform conduct, including its privacy policy, uniform methods of data collection, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

84.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

85.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Personal Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Petition.

86.     Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

87.     Likewise, under Md. Rule 2-231(c)(4), the following issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.  Whether Defendant owed a legal duty to Plaintiff and Class

Members to exercise due care in obtaining, storing, collecting, maintaining, using, and/or safeguarding their Personal Information;

b. Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in obtaining, storing, collecting, maintaining, using, and/or safeguarding their Personal Information;

c. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d. Whether Defendant adequately and accurately informed Plaintiff and Class Members that their Personal Information had been compromised;

e. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

f. Whether hackers obtained Class Members' Personal Information via the Data Breach;

g. Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members; and

h. Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

<u>COUNT I -NEGLIGENCE</u>

88. Plaintiff realleges and incorporates by reference each and every allegation set forth above.

89. CAMG had a duty to the Plaintiff to maintain data security measures consistent with statutory and industry standards.

90. CAMG had a duty to the Plaintiff to design, maintain, or test security systems to ensure that Plaintiff's Personal Information (PI) in their possession was adequately secured and protected.

91.    CAMG had a duty to the Plaintiff to implement processes that would detect a breach of its security system in a timely manner.

92.    On information and belief, CAMG breached each of these duties, as evidenced by the events described in this complaint.

93.    CAMG knew or should have known of the risks inherent in collecting, maintaining, and storing PI and financial records of Plaintiff and the heightened risk of doing so without adequate security systems and protocols.

94.    CAMG owed a duty to Plaintiff to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

95.    On information and belief, CAMG breached the above duty, as evidenced by the events described in this complaint.

96.    CAMG had a duty to prevent foreseeable harm to Plaintiff. This duty existed because Plaintiff were foreseeable and probable victims of inadequate security practices.

97.    It was foreseeable that Plaintiff would be harmed by the failure to protect their PI because hackers routinely attempt to steal such information and use it for nefarious purposes.

98.    CAMG breached the duties it owed to Plaintiff to keep their information secure.

99.    But for CAMG's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PI would not have been compromised.

100.    On information and belief, CAMG had numerous opportunities in advance of the breach to reasonably implement adequate cyber security measures as part of their duties to the Plaintiff but failed to do so.

101.    On information and belief, Defendant failed to maintain data security measures consistent with statutory and industry standards.

102.    On information and belief, CAMG failure to adequately implement one or more of the FS-ISAC's 15 fundamental cybersecurity recommendations essential to financial services firms' security and business operations, resulted in the breach. See https://www.fsisac.com/cyber-fundamentals (last accessed February 23, 2025).

103.    On information and belief, Defendant failed to implement the following measures recommended by the FBI as proactive preventative measures to maintain computer network security and avoid attacks, such as the one that resulted in the breach:

   a.  Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered;

   b.  Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing;

   c.  Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users;

   d.  Configure firewalls to block access to known malicious IP addresses;

   e.  Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system;

   f.  Set anti-virus and anti-malware programs to conduct regular scans automatically;

g.  Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary;

h.  Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have written access to those files, directories, or shares;

i.  Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications;

j.  Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder;

k.  Consider disabling Remote Desktop protocol (RDP) if it is not being used;

l.  Use application whitelisting, which only allows systems to execute programs known and permitted by security policy;

m.  Execute operating system environments or specific programs in a virtualized environment; and

n.  Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units; and

o.  Conduct an annual penetration test and vulnerability assessment.

104.   On information and belief, Defendant failed to implement the measures recommended by the United States Cybersecurity & Infrastructure Security Agency to prevent and detect cyber attacks, including the attack that resulted in the breach.

105.    On information and belief, Defendant failed to implement the measures recommended by the Microsoft Threat Protection Intelligence Team to prevent and detect cyber attacks, including the attack that resulted in the breach.

106.    As a direct and proximate result of CAMG's negligence and breach of duties, Plaintiff sustained and will continue to sustain economic loss and other harms.

107.    Plaintiff experienced and/or face an increased risk of experiencing the following forms of injuries:

•    direct and indirect negative impacts on health and welfare, leading to permanent and irreversible consequences in his personal and professional life; and

•    emotional distress, mental pain and suffering due to exposure of highly sensitive private information.

108.    Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Personal Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant had a duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class Members were foreseeable and probable victims of inadequate security practices.

109.    In fact, not only was it foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their Personal Information, because hackers routinely attempt to steal such information and use it for nefarious purposes, but Defendant also knew that it was more likely than not Plaintiff and other Class Members would be harmed, and in fact, suffered harm as identified above.

110.    Defendant breached the duties they owed to Plaintiff and Class Members to keep

their information secure. But for Defendant' wrongful and negligent breach of its duties owed to Plaintiff and Class Members, and without any wrongdoing on the part of Plaintiff or Class Members, Plaintiff's and Class Members' Personal Information would not have been compromised.

111.     Plaintiff relies on the doctrines of actual and apparent agency, res ipsa loquitur, and respondeat superior where applicable.

112.     CAMG's negligence caused Plaintiff to suffer harm as described above and actual damages in an amount to be determined at trial.

COUNT II –VIOLATION OF MARYLAND PERSONAL INFORMATION PRIVACY ACT ("PIPA"), MD. COMM. CODE §§ 14-3504

113.     Plaintiff realleges and incorporates by reference every allegation set forth above.

114.     Per Maryland §14–3501 (e) (1), "Personal information" (PI) means: (i) An individual's first name or first initial and last name in combination with any one or more of the following data elements, when the data elements are not encrypted, redacted, or otherwise protected by another method that renders the information unreadable or unusable:

1. A Social Security number, an Individual Taxpayer Identification Number, a passport number, or other identification number issued by the federal government; 2. A driver's

license number or State identification card number; 3. An account number, a credit card number, or a debit card number, in combination with any required security code, access code, or password, that permits access to an individual's financial account; 4. Health information, including information about an individual's mental health; 5.A health insurance policy or certificate number or health insurance subscriber identification number, in combination with a unique identifier used by an insurer or an employer that is self–

21

insured, that permits access to an individual's health information.

115.    The actions of Defendant described in this complaint constitute breach of a security system under §14–3504.

116.    CAMG violated PIPA because it did not provide notice of the breach of its security in accordance with the requirements of §14–3504.

117.    None of the communications from CAMG to Plaintiff following the breach included all of the information required in §14–3504 and the absence of this vital information rendered the notices insufficient.

118.    CAMG also violated PIPA because it did not provide notice of the breach within the minimum timelines required by the statute.

119.    On information and belief, CAMG also failed to provide adequate or timely notice to the Maryland Attorney General of the incident, as required by §14–3504.

120.    Through CAMG's actions alleged above, Plaintiff suffered actual damages in an amount to be determined at trial.

COUNT III – ACTION FOR VIOLATION OF MARYLAND CONSUMER PROTECTION ACT ("CPA"), MD. COMM. CODE §§ 13-301.

121.    Plaintiff realleges and incorporate by reference each and every allegation set forth above.

122.    CAMG has engaged in unfair or deceptive trade practices, in violation of Maryland Code, Commercial Law Article §§ 13-301 and 13-303.

123.    Under Maryland Code, Commercial Law Article §14–3508, a violation of MD PIPA

is an unfair or deceptive trade practice as defined in the Maryland Consumer Protection Act.

124.    CAMG's violations of MD PIPA, as described above, therefore are unfair and deceptive trade practices and violations of § 13-301.

125.    Through Defendant's actions alleged above, Plaintiff suffered actual damages in an amount to be determined at trial.

126.    Plaintiff should also be awarded attorneys' fees as authorized by Maryland Code, Commercial Law § 13-408(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ellen Ryan, on behalf of herself and all others similarly situated, respectfully requests the following relief:

A.      For an Order certifying the instant matter as a class action;

B.       For equitable relief enjoining Defendant from engaging in the wrongful conduct described above;

C.      For compensatory damages;

D.      For reasonable attorney's fees and costs; and

E.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Ellen Ryan, pursuant to pursuant to Md. Rule 2-325, demands a trial by jury of all issues so triable.

Respectfully submitted,

/s/ *Arnold J. Abraham, Esq.*          /s/ *Eric Menhart, Esq.*

Arnold J. Abraham                     Eric Menhart
The CyberLaw Group                    Lexero LLC
220 N. Liberty Street                 80 M St SE Suite 100
Baltimore, Maryland 21201             Washington, DC 20003
Phone: 443-906-3495                   Phone: 855-4-LEXERO (855-453-9376)
abraham@thecyberlawteam.com           Eric.Menhart@lexero.com

*Attorneys for Plaintiff and Proposed Class*